### WHEELER v. KEETON et al.

Court of Appeals of Kentucky.

Oct. 19, 1951.

Nickell & Keck, West Liberty, for appellant.

H. R. Wilhoit, Grayson, for appellees.

MORRIS, Commissioner.

Appellees, Keeton and wife, executed the following agreement with appellant: "Jan. 18, 1950. We, parties of the first part have sold a tract of land on Laurel Fork, Morgan County, to party of the second part, Roe Wheeler, for $900, and will make a deed this month."

Following Keeton's refusal to execute a deed, for a reason later appearing, Wheeler filed a petition in equity asking that the court require Keeton to accept the stated consideration (tendered in court) and to fulfill his contract by executing and delivering to him a deed to the tract of land, fully described in the pleading. Appellee filed general demurrer and the court sustained it; no further pleading was offered by plaintiff and his petition was dismissed with appeal granted.

Appellant's undenied petition fully sets out the circumstances of ownership and the situation of parties at the time of negotiations leading up to the writing of the agreement. Before meeting with the Keetons appellant went to the farm "owned by them on Laurel Fork, and discussed the boundaries of same with his agent and tenant," the same tract described in his pleading.

It was stated that nine days after the agreement was made at the home of appellees, the parties met in a law office in West Liberty, "for the purpose of carrying into effect the contract by the payment of the consideration," which plaintiff says he was able and ready to pay, and the execution of the deed. It is alleged that Keeton dictated the description of the tract, just as set out in the petition.

The real cause of failure to complete the contract was that Keeton, after dictating the identical boundary, insisted on the insertion of a clause reserving to grantors all coal and coal rights, "a provision not in accord with the written agreement."

The chancellor in sustaining the demurrer suggested in his order that the boundary was not sufficiently definite, "theretofore it could not be designated." No suggestion is made as to whether or not extrinsic evidence was allowable, but from reading of briefs, it appears that the question was ably and fully discussed, pro and con. Counsel for appellant states the only question to be determined is whether or not the memorandum sufficiently designated the property so as to warrant its identification by parol evidence. We take the word "sufficiently" to mean in relation to identification, "with 'reasonable certainty.'" Montgomery v. Graves, 301 Ky. 260, 191 S.W.2d 399, 401.

That part of the statute, commonly known as the "Statute of Frauds," KRS 371.010, K.S.1930, § 470, here involved reads: "No action shall be brought to charge any person: * * * upon any contract for the sale of real estate, * * unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith. * * * *"

■ Here we have a note or memorandum manifesting a *sale* of a tract of land and an agreement to make a deed "this month," assuredly a sufficient basis for the institution of an action against the "party" to be charged. However, by numerous decisions of this Court we have enlarged on the statute, or construed it to mean that the real estate contemplated must be sufficiently designated or designated with such reasonable certainty as to locate it, else extrinsic evidence for the purpose of location would not be allowable.

By reference to Annotations of KRS 371.010 and Kentucky Digest, "Statute of Frauds," it will appear that the statute, including that portion relating to real estate contracts has been the subject of much controversy, conclusions varying, due no doubt to the varied forms of the contract or the facts as adduced and the circumstances attending the making of the contract.

Many of these cases are referred to by counsel in their respective briefs, but to review all of them or some not referred to, would require much time and space. Counsel for appellee contends that the court was correct in sustaining the demurrer, citing as controlling Price v. Hays, 144 Ky. 535, 139 S.W. 810; Pope v. Myers, 218 Ky. 731, 292 S.W. 318; Corso v. Crawford, 228 Ky. 338, 14 S.W.2d 1093, and in rejoinder brief pointing out distinction between those and such as are cited by appellants, and the case here.

In the first named case the tract agreed to be conveyed was described as " 'about 150 acres of land near Otter Creek station, one mile north of Rineyville, Hardin coun-

ty, Ky., on I. C. R. R.' " The trial court sustained demurrer and we affirmed, saying that no words were used to give a starting point, nor was the description sufficient to authorize oral proof to aid in identification. In that case it was pleaded that the vendor owned only one tract of land at the place named, but we said that "this idea is not gotten from the writing. There was nothing therein to indicate this fact." Appellant here alleged the same fact, and if it were the only factual allegation in his petition, the case would be persuasive, though it is difficult to understand how it would be impossible to locate the boundary of the "about 150 acre farm"; from the given designation. The foregoing suggestion might apply to the opinion in the second named case, where the designation was: " 'The following tract of land lying in Harlan county, Kentucky, on Fork ridge of Catrons creek (with the exceptions of the Slaters fork pieces now under fence by John W. Pope) so as to reach the Jane Dean's line and being on northeast side of Catrons creek.' " The Court held that the designation did not sufficiently identify the land to allow extrinsic evidence, distinguishing this case and its class from those where the contract referred to the tract in question as "his" land at some certain place, or as his "home place." The third case is of similar import and follows the ruling in the Price-Hays case.

Appellant takes the position that there is a distinction between a "sale" and an agreement to sell, with promise to make a deed later, and points us to Campbell v. Preece, 133 Ky. 572, 118 S.W. 373, 374, as sustaining his point. In that case Preece had executed a writing conveying to Campbell certain growing timber on the place " 'that said Campbell *sold* to said Preece situated on the Shanty branch on the left fork of Peter creek, Pike county, Kentucky.' " Later Campbell gave Preece a receipt for $265 "as part payment on the land sold him by myself." In our opinions upholding this contract of *sale* we said: "Reading the two writings together, it is noted that appellant states he had theretofore sold appellee certain

land on the Shanty branch on the left fork of Peter creek, in Pike county, Ky. The location of the land is then established. Its boundary remains alone to be ascertained. The writings speak of the transaction in the past tense. It refers to the land which Campbell sold to Preece."

Further along the Court said: "It is never good to refer to a future event, as that could not have been certain when the memorandum was made. But generally a reference to an existing or past event is good. There it can be known certainly what was intended; for that which has transpired is changeless. 'The place I live' identifies one place only, and is susceptible of being shown definitely and unerringly. 'The place which I sold to A.' is likewise susceptible of identification; and, if I had sold but one place to A., it is as certain as would have been a more particular description."

The writer of the opinion remarked that "it is from such instances that the maxim has arisen, 'That is certain which can be made certain.'" Counsel for appellee argues that the reference to "past event" related to the fact that the vendor had put the vendee in possession prior to the agreement, but from the language quoted it seems to bear on the fact that Campbell had sold to Preece the tract in question.

Exemplary of instances in which we have held extrinsic evidence allowable where the quality of the memorandum was questioned, and mainly relied on by appellant, we find in a very old case, Ellis v. Deadman's Heirs, 4 Bibb 466, that Ellis had executed a receipt for blank dollars, "in part payment of a lot he bought of me in Versailles." We held oral evidence admissible for purpose of location.

We wrote in Hall v. Cotton, 167 Ky. 464, 180 S.W. 779, 780, L.R.A.1916C, 1124, in upholding a questioned contract: "This court has been more or less liberal in upholding vague and indefinite description embraced in contracts for the sale of lands,

and has shown an inclination to relax, in a measure, the older and more vigorous interpretation given to the statute of frauds * * *." This statement will be found to be true in most instances by reference to some of the older cases, and those of later dates, particularly Montgomery v. Graves, 301 Ky. 260, 191 S.W.2d 399, 400. In that case the writing was a receipt for a "'down payment on house 554, Camden,'" no city, town, or state mentioned. The Court upheld the contract and located the "house" by resort to an affidavit signed and sworn to by the vendor before a notary public of Jefferson County, reciting that he had sold the property "554 Camden" Avenue, the court observing that it was common knowledge that Louisville was in Jefferson County.

In Hon v. Richerson, 301 Ky. 837, 193 S.W.2d 441, the memorandum did not describe the boundary, but the tract was referred to as a number of acres that joined the land of vendor, without naming county or state. We held parol evidence allowable to locate and identify the tract.

In the Montgomery case we said that the affidavit was allowable to designate the particular property the parties obviously had *in mind;* that a memorandum is sufficient if it identifies the property when read in the light of the circumstances of possession or ownership and the situation of the parties when the negotiations were had. We expressed the same idea in the Hon case, saying that the Statute of Frauds demands a writing which itself affords a means of identification, and while parol evidence is inadmissible to vary or add to the contract it is admissible to designate the subject matter already identified in the minds of the parties.

We conclude that the court was in error in sustaining the demurrer to the petition. We, therefore, reverse the judgment with directions to set aside the order sustaining the demurrer and dismissing the petition.

Judgment reversed.